PARKER v. APPERT.

PATENTS ; INTERFERENCE ; PRIORITY ; FOREIGN PATENT ; AMEND-
ING PRELIMINARY STATEMENT.

1. Whether, on an application for a patent for an invention for which a patent has previously been obtained in a foreign country, the applicant is limited to the date of the issue of the foreign patent as the earliest date to be claimed for the conception and publication of his invention, *quære*.

2. It is always a suspicious circumstance in a case of interference that after the claim of one of the parties has been fully disclosed and fixed as of a specified date, the other should then seek by amendment of his preliminary statement to show a date of invention different from that in his original statement and prior to it and to the date of his opponent.

3. Amendment of the preliminary statement in the important matter of the date of the conception and communication of an invention should not be allowed in such case unless it is shown that the interests of justice plainly demand it.

4. The statement of the appellant that he made the sketches upon which he relies for proof of the date given in his amended statement at that date, but mislaid them and forgot where they were until after the disclosure of the appellee's date, *held* incredible in view of the facts of the case, and that the amendment of his preliminary statement was improperly allowed.

Patent Appeals.   No. 46.   Submitted March 10, 1896.   Decided April 6, 1896.

Hearing on an appeal from the decision of the Commissioner of Patents in an interference proceeding.   *Affirmed.*

The Court in its opinion stated the case as follows:

This is an appeal from the decision of the Commissioner of Patents in an interference case involving the question of priority of invention of a process for the manufacture of what is called "wire-glass"—that is, glass with a metallic netting embedded in it.   The issue of invention, as stated by the several tribunals of the Patent Office, is this:

"The process of making sheets of glass with a metallic trellis embedded therein, said process consisting in pouring and rolling out a layer of glass, simultaneously applying the trellis to the surface thereof, pouring a second layer of glass upon the trellis and rolling the same, the operation being carried on progressively."

On April 25, 1894, the appellant, John E. Parker, a citizen of Philadelphia, in the State of Pennsylvania, applied for letters patent of the United States for this invention, which he claimed to be his own, although in his application he describes it somewhat differently, as follows:

" 1. A process of manufacturing wire-glass, consisting in placing upon a rolling-table a sufficient quantity of molten glass to form one layer of a desired sheet, placing thereon a sheet of wire gauze or netting and pressing the wire gauze or netting into the surface of the glass by the passage of a

pressing-roller, placing a quantity of molten glass upon the lower sheet so formed, and rolling such molten glass to form a sheet of the required thickness.

" 2. The herein-described process, consisting in pouring molten glass upon the table in sufficient quantity to form a sheet of approximately half the thickness of the complete sheet desired to be produced, of passing a pressing-roller over the surface of the molten glass thus poured, of providing upon the upper face of this resultant sheet a sheet of wire-gauze, of pouring molten glass upon the sheet previously formed in sufficient quantity to form the desired additional thickness of the sheet to be produced and rolling this upper layer of molten glass and welding the two sheets of glass together through the meshes of the wire-netting."

Elsewhere in his specification he states his invention as follows :

"My invention relates to certain improvements in the manufacture of sheets or plates of glass having centrally embedded therein a sheet of wire gauze or netting, and its principal object is to provide a novel process by means of which the wire gauze or netting may be inserted within the body of the glass without forcing the same through one of the faces of the sheet, and subsequently closing the openings made by the passage of the wire."

On April 27, 1894, two days after the appellant's application, the appellee, Leon Appert, a citizen of the Republic of France, and a resident of the city of Paris, who on January 12, 1894, had received letters patent in France for the invention in controversy, also made application for letters patent from the Patent Office of the United States. The first claim of this application is in almost the exact words of the issue of invention as hereinbefore first stated.

On May 24, 1894, the Commissioner of Patents declared an interference between these two applications, and the parties thereupon proceeded in due time to file their preliminary statements in accordance with the rules of the Patent Office.

Appert seems to have been the first to file, or at least to make his preliminary statement, which was executed at Paris, on July 9, 1894. In this he alleged that, after several years of experiment, he succeeded, on or about the 1st day of October, 1893, in perfecting the process and the apparatus described, and that during the first week of October of 1893, his apparatus was put into successful operation and produced substantially the desired product, which is now a marketable commodity and is manufactured on a large scale at St. Gobain, one of the largest plate-glass manufactories in the world. He stated also that he had applied for patents in various countries in Europe; that a patent had been issued to him in France, under date of October 19, 1893, which was the date of his application, the actual issue of the patent having been, as already stated, on January 12, 1894, and that in April of 1894 patents had been issued to him in Belgium and Italy.

The appellant, Parker, delayed making his preliminary statement until on or after July 25, 1894; and in that statement he alleged that he conceived the invention set forth in the declaration of interference in the latter part of the year 1893; that sketches illustrating the invention were made on or about January 20, 1894; that on that day the invention was first explained to others; that no model of the invention had been made by him, and that the invention had not been embodied in a full-sized working machine or practically operated.

Later on, however, having obtained leave to amend his statement, he filed, on or after February 28, 1895, an amended preliminary statement, in which, after renewing the statement that he had conceived the invention "in the latter part of the year 1893," he averred that the first sketches illustrating the invention were made by him on or about December 20, 1893; that on that day the invention claimed was explained by him to others, and that subsequent sketches illustrating the invention were made by him on or about January 20, 1894.

Appert seems from the record to have rested entirely upon his French patent without other testimony; and he claimed that, as it bore date as of October 19, 1893, which was the date of the application for it, he was entitled to claim that as the date of his invention. But in view of an opinion rendered by the Attorney-General of the United States in A. D. 1889, on the effect to be given to the " International Convention for the Protection of Industrial Property," entered into between the United States and various other nations of the world, including France, at Paris, on March 20, 1883, and published by proclamation of the President of the United States on June 11, 1887 (25 Stat. 1372), it was held by the various tribunals of the Patent Office and by the Commissioner that the date of the issue of his French patent to him (January 12, 1894) should be assumed, for the purposes of the present application, to be the earliest date which he could claim for the conception and publication of his invention; and to that date he was restricted by all the decisions rendered in the Patent Office.

The examiner of interferences found that Parker had conceived and disclosed the invention in December of 1893, and that therefore he antedated Appert and was entitled to be adjudged the prior inventor. But the board of examiners in chief reversed this decision, and held that, if Parker ever conceived the invention at all, of which they seem to have had grave doubt, there was no sufficient testimony to show that he had any conception whatever of it before January 20, 1894, and they accordingly awarded priority of invention to Appert. Upon appeal by Parker their decision was affirmed by the Commissioner of Patents, who seems to consider that the Patent Office had been to some extent imposed upon in the matter of the allowance to Parker to amend his preliminary statement so as to show a different date of conception and communication of the invention from that set forth in the original preliminary statement.

From the decision of the Commissioner of Patents Parker has appealed to this court.

*Mr. Horace Pettit* for the appellant.

*Mr. Anthony Pollok* and *Mr. Philip Mauro* for the appellee.

Mr. Justice MORRIS delivered the opinion of the Court:

Assuming that the officers and tribunals of the Patent Office were correct in holding that the appellee, Appert, was limited to the date of January 12, 1894, as the date of the communication of his invention to the public—a point, however, upon which we do not deem it necessary here to pass—it is very plain that if the appellant were limited to the date of January 20, 1894, stated in his original preliminary statement as that of his communication of his alleged invention to others, Appert would beyond question be entitled to judgment of priority of invention. It is only by the reformation of his preliminary statement, after the discovery of his adversary's position, and the reference backward to the month of December of 1893 of his communication of his invention to others, that the appellant seeks to overcome the otherwise manifest priority of the appellee. Whether, in the face of the suspicion of tergiversation fairly engendered by the inconsistency of his two statements and the peculiar explanation which he has given of his now assumed mistake in the original preliminary statement, he has satisfactorily substantiated by proof the allegation of his amended statement, that he first made sketches of his alleged invention and explained the same to others on or about December 20, 1893, is the question upon the determination of which the controversy before us depends. The question is purely one of fact, and under the decision in the case of *Hisey* v. *Peters*, 6 App. D. C. 78 : 71 O. G. 892, we might very well decline to disturb the conclusions reached by the board of examiners and the Commissioner of Patents.

In that case we said : " Upon the case coming into this court on appeal, after the question of fact has been examined and ruled upon as in this case, what is the rational presumption to be indulged as to the conclusion of fact ?

We think it is established beyond controversy that, in a case so presented, the decision of the Patent Office must stand unless the evidence shows beyond any reasonable doubt that the appellant was the first inventor." But, as we also said in that case, so we may say in this : " Irrespective of this *onus* cast upon the appellant of showing clearly the existence of error in the conclusions arrived at by the officials in the Patent Office as to the facts of the case, we have no difficulty in arriving at the same conclusion on the question of priority of invention, upon the evidence in this record."

We think that, upon the record as made in this case, the appellant more correctly stated his dates in the original than in the amended preliminary statement. Undoubtedly cases not infrequently occur wherein it is proper to amend a preliminary statement, even in the vitally important matter of the date of the conception and communication of an invention ; and to further the ends of justice amendment will always be allowed in proper cases. Yet it is always a suspicious circumstance in a case of interference that, after the claim of one of the parties has been fully disclosed and fixed as of a specified date, the other should then seek by amendment of his preliminary statement to show a date of invention different from that in the original statement and prior to it and to the date of his opponent. Amendment upon so important a point should not be allowed in such a case unless it is shown that the interests of justice plainly demand it ; for upon the determination of these dates it depends, in the majority of cases, which party is entitled to the patent, and a change of memory is comparatively easy when self-interest dictates a different date. The Commissioner of Patents, in his opinion in this case, plainly intimates that the office was to some extent imposed upon in the allowance of the amendment in this instance ; and he seems to have had good reason for his animadversion on the matter. The amendment was not made, or sought to be made, nor was there anything whatever to indicate the

propriety or expediency of its being made, until the appellee's case had been fully disclosed and the date of his invention, arbitrarily fixed as of the date of the issue of his French patent, had been irrevocably determined. Then, and not till then, did the appellant deem it expedient to amend. He shows no good reason for his delay.

The appellant's preliminary statement, as originally made, had set forth an alleged disclosure of the invention in controversy and the making of a sketch by him to illustrate the same on January 20, 1894 ; and the sketch there referred to, which bore the date specified and which appears on its face to have been of an exceedingly crude character, was produced in evidence, and a copy of it is found in the record before us. But when it became apparent that an earlier date than January 20, 1894, would be required in order to overcome Appert's patent of January 12, 1894, six other sketches were discovered and produced, and the preliminary statement was amended. The story of these six sketches, as told by the appellant in his testimony, following therein his amended preliminary statement, is that they were made by him on December 20, 1893 ; that he knows they were made on that day because they bear date on that day ; that it has been his custom for several years, in common with the majority of Patent Office draftsmen, to date all sketches on the day on which they were made ; that three of the six sketches (numbered in the record as 1, 2, and 3) were used to illustrate an application executed on January 10, 1894, and filed in the Patent Office on January 18, 1894, for a patent of a process for the manufacture of glass different from the process in controversy here ; that sketches numbered 4, 5 and 6, of which No. 4 is claimed to illustrate the process now in issue in these proceedings, were put aside to be submitted to some person familiar with the practical manufacture of wire-glass, which the appellant, who is merely a draftsman, does not claim to be ; that accordingly they were pinned together in such manner as that sketch No. 1 would appear first to anyone taking up the papers

and the other sketches would be covered by that one ; and that they were then put away with the files of the papers relative to the application for patent made on January 18, 1894, whence they were exhumed on February 22, 1895, to be used for the amended preliminary statement of February 28, 1895.

The appellant further testified that he had different places or different files in his office for pending applications and for allowed cases ; that the application of January 18, 1894, had been allowed by the Patent Office on May 3, 1894, but had been temporarily withdrawn from issue for a purpose, and the papers relative to it were in one file in his office ; and that the papers relative to the pending application, that of April 25, 1894, upon which arose the present proceedings in interference, were in another and different file. Some action had been had by the Patent Office in this latter case also on May 3, 1894, when the former application was allowed ; and there was occasion at that time to handle the papers in both cases. Again on September 28, 1894, and again on October 4, 1894, there was occasion to take out and handle the papers in the allowed application ; and yet it is claimed that the sketches Nos. 4, 5 and 6, among those papers, were not discovered until February 22, 1895. It was also testified by the appellant that probably on or about March of 1894 he submitted to a manufacturer of glass some sketches practically identical with sketches Nos. 4, 5 and 6, and made in his presence, but not those sketches themselves. But it does not appear what the manufacturer thought of them, nor were these reproduced sketches produced in evidence, nor was the manufacturer called as a witness to corroborate the statement. And he further testified that, " during all that period of time from December of 1893 to the date on which the interfering application was filed, the process was borne in mind and very many different sketches of different forms of apparatus for carrying such process into effect were made."

It is also a singular fact in the case that, while the appel-

lant, apparently with the sketches before him, testified that he knew that the six sketches in question were made on December 20, 1893, because they bore date on that day, and it was his custom to date his sketches, yet the record shows sketch No. 1 to be without any date ; sketch No. 2 alone to bear the date of December 20, 1893, and the other four sketches to bear the date of December 25, 1893 ; and there is in the record no explanation of the discrepancy.

These are the salient points of the appellant's testimony. The testimony of his two associates in corroboration of it is too vague and insufficient to justify much consideration of it.

The inherent improbabilities and inconsistencies of this story are palpable.　It is not reasonable to suppose that the appellant, expert draftsman as he apparently was, would pin together and put away in one file sketches appertaining to radically distinct and different matters.　It is not reasonable to suppose that he would have forgotten them at the time at which they were most needed, when the present application was filed on April 25, 1894, within the month following the time when he reproduced them to the manufacturer of glass whom he consulted, as he claims, and again when the original preliminary statement was filed on July 27, 1894.　It is not reasonable to suppose that he did not see them or that he would not necessarily have been reminded of them on May 3 or 4, or September 28, or October 4, 1894, on all which occasions he handled the papers in which they were contained.　If there was here the element or the indication of a valuable invention, valuable enough to induce him to make application for a patent for it in April of 1894, and important enough to induce him to consult a practical manufacturer about it in March of that year, as he pretends, and to reproduce the sketches for the benefit and information of that manufacturer, it is simply incredible that he should wholly have forgotten his original sketches, claimed to have been made by him on December 20, 1893, and to have forgotten them during all the subsequent

·months until February 22, 1895, when he admits that on three several occasions, at least, he had the sketches actually in his hand, and must necessarily have been reminded of what they were, even if he did not actually see them. If these sketches were actually made in December of 1893, as it is now claimed they were, the conclusion is inevitable either that they refer solely to the apparatus or process for which a patent was sought under the application of January 18, 1894, or else that they amounted to nothing more than mere fancy sketches, which have never been reduced to practice, either actual or constructive, and were, in fact, abandoned almost as soon as made.

There is, perhaps, one other alternative, and that is, that they may have been made in December of 1894, under the stringency of the appellant's need to counteract in some way the otherwise conclusive· case of the appellee against him ; but this alternative need not be considered.

We are entirely satisfied from ·the testimony that the appellant has failed to show any date for his alleged invention earlier than January 20, 1894 ; that his proof is wholly insufficient to show any discovery or communication by him of the issue of invention here in December of 1893, or at any other time prior to January 20, 1894 ; that his amended preliminary statement was without foundation in fact ; that his original preliminary statement more correctly stated his claim, and that he has failed to overcome the appellee's case as made by French patent issued to the latter on January 12, 1894.

*The decision of the Commissioner of Patents in this case will, therefore, be affirmed, and priority of invention will be awarded to the appellee, Leon Appert. A certificate of the proceedings and decision of the case in this court will be returned to the Commissioner of Patents to be entered of record in the Patent Office, as directed by the statute. And it is so ordered.*

Mr. Chief Justice ALVEY did not sit in this case, his place being taken by Mr. Justice HAGNER, of the Supreme Court of the District of Columbia.—REPORTER.